number one nine one seven one nine Althea Johnson at all versus Horace Johnson at all. Good morning, Your Honors. Ronald Resnini for the Plaintiff's and Johnson's. Good morning. As the Court is aware, we're here to disagree with the decision of Judge McConnell. There's several areas that we find that there was errors committed below. I believe the Court's principal concern here may be the analysis of the terminology civil action as it appears in 27-7-2.2 as enunciated by the Rhode Island Legislature. We feel that that terminology is contextual. It's not necessarily there to be taken in the way Judge McConnell concluded it to be. And as a practical matter, having utilized that statute in my practice, it was the first time that any carrier has ever taken a position that we had to institute suit in order to effectuate the power of 27-2.2. Now, we say, well, how do you come to that? How did Judge McConnell come to that conclusion? You know, he first looked at the Blacks Law Dictionary that I believe he started off with in 1899, but obviously we didn't have any interest statutes applicable at that particular point. However, when you look, and I don't want to be inane about referring to something as simplistic and as far removed from the illegal Blacks Law Dictionary, but last night while I was preparing for today's argument, I just used my little old iPhone and I said, let me have a definition of civil action. And the civil action, which also, for some strange reason, also brought in Blacks Law right after it indicated the following, that it indicated it's a legal action to protect a private civil right or to compel a civil remedy, and then I left it with the appropriate citations. What my position is, is that, first, I think that issue should have been certified to the Rhode Island Supreme Court. Judge McConnell felt that wasn't necessary. He didn't feel it fell within the standards to do so. This is clearly a case of first impression. Let's understand this. The whole purpose of these statutes, certainly to back it up as well, is to effectuate prompt settlement practices with the insurance carrier, not to delay the civil litigation issues to occur, litigation expenses and costs, and significant delays. If you apply this with the application of 27.7.2.2, as I say it should apply, then you totally fall into that category and it becomes significantly more consistent to the expeditious resolution of cases so that what they tried to do is to say in any – I'm sorry? Can I ask you a factual question, please? So 27.7.2.2 says that there shall be a presumption to have been rejected if the insurer does not respond in writing within a period of 30 days. Yes. So they responded in writing requesting an extension, is that correct? They did. So why is that not a response in writing? The response in writing – and that's a very, very good question. I think that becomes – Is there a case law that says it has to be a response that specifically addresses whether they're going to accept? Because the statute itself doesn't say that. It is ambiguous on that. My answer to that is that falls into a factual question that should be determined by a trier of fact, not by Judge McConnell, because there's a very – No, it's just why isn't that just a flat-out legal question? What is a response? I'm sorry, Your Honor? Why isn't that just a legal question? What is a response? Well, I think the legal question as to whether or not perhaps the 30-day period under the circumstances, you know, is something – The legal question is, is a response in writing – A response. Is a request for an extension a response in writing? That's just a pure legal question. If that's a pure legal question, let's go along with that. Then I say yes, the writing of the Supreme Court should determine whether or not that conforms to that application, because what's ambiguous about it? Well, what's ambiguous is because the response in my position is it wasn't done in good faith, because the response that they asked for the extension at that particular point, they had sufficient knowledge to make a decision, understanding that the interview that supposedly was the driving force as to whether they would or whether they wouldn't occurred two days before the 30 days expired. So they got the answer that they had within the 30 days. They waited until three days after the 30 days to implement what they knew two days before. So I say a prior effect should make a determination as to whether or not that was a reasonable response. And if the prior effect does or does whatever they do, then the court can then say whatever they want to say about the legal application of the law. But I say under the circumstances, that is a factual analysis that should not have been reserved by Judge McConnell. When they requested an extension, did you respond by saying no, we want an answer within the 30 days? Yes, there was a legal counsel who called me. He said to me, he asked me over the phone, he says, can we have a 30-day extension, another extension? I said, absolutely not. He said, no. So by the way, when he called me, that's the day that they had the answer from their insured. Whether or not they needed even to talk to their insured, they had the answer, I say, long before that. But give them all the benefit of the doubt on that. Let's say that whatever they needed to do, it took them that long to do it. So say, okay, now what? They had the answer that day, but they didn't make the answer that day. They waited until the 30 days expired. And we all, when you listen to 30 days, you say, that's not such a long period of time. But how many plaintiffs, lawyers in benefit of lawyers' assistance, lose their right to recover under claims because these 30-day statutes, the notices to the city or towns, proliferate as to whether or not there's a defect in the public way. Or there's a statute of limitations that expires two minutes after the three-year period or a two-year period or a one-year period, whatever is contained within the policy. So I say that because the carrier itself was concentrating on what to do about this issue, which I say they already had enough information to resolve, that was just a deletery, bad faith application which they should be compensable for. In the cases, I think it was Roy Starchopper, I think it was, it might have been this court in the Amercroft case that cited Roy versus Starchopper, that indicated that the test of whether or not there was any bad faith is what was existing in the knowledge of the carrier at the time that they made the decision. So what are we arguing about here, about three days' interest? Is that what this argument is? No, it is not that. Let's assume you win this case. What's really at stake here? Here's what's at stake. The way I see the application of the statute in the ceremony is I would then proceed to trial, I would get a judgment, and whatever judgment I get, which would be a lot more than two or three percent interest, would be what the company would have to address. That's under the Rhode Island law. You can't even bring the suit now, that's the problem, right? Well, I did institute a suit, just coincidentally, maybe 30 days or so after, while they were expiring the 30-day requirement, so I did institute a suit. And when I instituted a suit in the Rhode Island court, then the defense counsels, we moved it over to the federal court, so we do have a suit pending. So the suit would continue with appropriate discovery, and then determine what the damages were, and then we go to trial. I agree with you. You've got the policy limits. So what you are arguing about, I think, is the ability to get something beyond the policy limits because of this three-day delay. Yes. And we didn't take the policy, of course. We did not take it. You did not take it. No, if I take it, then I'm out. I can't take the hundred and say that's it. So basically what you're trying to do is you're trying to use this issue to allow you to somehow get beyond the policy limits. Right. I'm trying to extend the policy limit, Your Honor. Correct. On a bad faith argument. Well, there's different components. One of them could be bad faith, but one of them is they fail to comply with 27.2 in a ceremony, the 30 days, because they didn't do it. They're stuck with it, just like we're stuck with it if we don't do things on time. So was there a written request for an extension, or was it just oral? I know he asked me, and I think I've got the answer here, but if you give me a chance to rebut, I'll find it. It's one of my papers. I think it was only oral, and then they backed it up with a written letter indicating that we refused to give them a 30-day extension. I think it went in that process. I believe that's how it went. Because if there wasn't a writing, then, yes, we do have to focus on whether this is a civil action. But to me, it seems that the focus would be on whether a request for an extension would constitute a response. Whether the response from me, Your Honor, or from them? From them. Let's see here. I might follow up. Is the focus on the beginning in any civil action, or should we be focusing on whether they responded in some kind within 30 days? I think we have to focus on whether or not they responded within an appropriate time frame. I think that's the critical issue. As long as I'm willing to concede that they asked for the extension, which they did, before the 30-day expired, which I said no. Then they offered the policy that it was three days later. But, of course, they already indicated, I think it was on page 6 of counsel's memorandum, that they had the interview with their insured two days before the 30-days expired, so they had the answer there. And there's opportunities to show that the answer that they waited so long to get really existed long before that period of time. So, for those reasons, we're talking about a technicality, but the whole system is built on technicalities. This is a technicality for one of those rare occasions that can serve a seriously permanently injured individual for life. So what if this question was sent to the Rhode Island Supreme Court to determine what a civil action means in the statute? Yes. You could do that? Yes. Did you request that, or did anybody request it? I did. I did request that during my argument. I did. I did. Just so I understand, your idea of what a civil action is, how would we measure it? At the moment, the action accrues? When the action accrues, correct. It's the beginning of the claim. As I said before when I started off, I think it's contextual the way they used it. If they meant or intended to mean it, what would you have to do to make it clear? What would be the measure of whether what you were proposing was a settlement of an action as opposed to just a request for cash? How would we know that the thing counts as a settlement of a civil action if there's no suit filed, if there's no complaint filed in court? If I understand the question correctly, this is what I would suggest. You take that 27-7-2.2, and if it's going to mean what they want it to mean, after it starts off with the word, in any civil action, comma, in which suit has been commenced, comma. They have that. I understand that. I'm saying on your interpretation, it doesn't have to be after suit commenced. What is my test for figuring out whether somebody who's asking an insurance company for cash is asking them to settle a civil action? I write to an insurance company tomorrow. I say, give me $500,000. Is that an offer to settle a civil action? No. How do I know what the measure is? One way to know the measure of it would be a complaint has been filed. That would make it clear. You don't want us to use that measure. No, I don't want you to use that measure. I say that's definitely one measure, but I'll tell you this. Let me go even further with the court. Let's say I just sued them, and they have no idea how injured this individual is, and I say I want you to pay the policy within 30 days, and they know nothing about the injury. No, I don't think I have any right to recover that because they need to have sufficient information to qualify the fact this case is with at least a policy analyst. And they had that. They had information that my client was saying. What do you want civil action to mean? I want civil action to mean that once any claim or demand is made against the insurance carrier for a claimant, that that would qualify as a civil action. Notice that there was representation on behalf of an attorney to pursue a claim for injuries. You want civil action to mean a claim against a carrier? Yes. Under the policy? Under the policy. Any policy claim? That's an odd way to describe a policy claim. It's civil action. I think there's a case that indicates it can't be any policy claim. I think there was another case that came down. I don't think it was this court that decided it, that didn't allow it a broad brush of any claim whatsoever. It's my understanding it has to be gravitated towards something where perhaps there's any claim of injury. I don't know if it can be applicable to a property damage claim. I'm not sure about that. I don't know for sure. You see, all these problems start to come into play if we don't make civil action mean a complaint in court. If there's a complaint in court, that's the measure of it. Whatever you're asking to settle is settling that civil action. It's very knowable. If we get away from that, I'm having trouble figuring out what our measure is. Perhaps it is. I'm not so asking. When I say asking you to get away from it, when I argue a lot of these cases in the Rhode Island Supreme Court, they always say, well, we're not ready to make the decision, get it over to the legislature. What I'm saying is the legislature has opted you out as far as giving a definition as to what this application of that statute applies and means. I take the position that it's the legislative intent as to what 27.2.2 should apply in cases such as this. I'm not asking the court to bastardize the issue of a civil action. I'm only indicating— The thing that is bothering me is Judge McConnell's reading of a civil action has the virtue of obviating this possible source of confusion because it's very knowable what we're talking about. We're talking about the complaint filed that initiated an action in court. He says given that, that's a very good reason to read it to mean that. One response that might be, well, if you read it not to mean that, it wouldn't be so up in the air. But it's sounding from everything you're saying like it would be pretty up in the air. That suggests to me maybe Judge McConnell was dead right that we should read civil action to mean a complaint because it takes care of all that confusion. Why should we attribute the legislature an intent to have a very unclear standard when it could be read to be quite clear and easily admissible? Let me—I'm going to take a shot at this. But I ask the court to think about this. When you think about 93A 176D, that's not really that much of a different animal than what we're talking about. That particular application which you see every day of the week does the same thing. And that doesn't require that you institute suit. In fact, that even goes out of its way to almost indicate that you file the 93A 176D before you institute suit. And they coincidentally use the same 30-day period. The only difference between what they do, I mean Massachusetts does and what Rhode Island does, is they just use different words to come to the same conclusion. They both end up with the same result. So that what I'm really asking the court to do, if you're looking at some guidance as to how what we can do to kind of stretch the civil action to the application which the legislator intended it to do, look to see what Massachusetts has done with 93A. And it's not that much of a difference. There's really no confusion. The biggest issue that protects the insurance carrier in situations like this, and their position would be, maybe we didn't have enough information to make a determination whether or not we had to pay the $100,000 because we, for whatever reason, didn't know that this guy would never walk again. If they can say that legitimately, then they opt out of the obligation of being committed to a so-called 30-day period. But again, this all comes down, what I said in the beginning, to be factual questions. So that's why this whole argument before Judge McConnell had a mixed bag of legal questions and factual questions. But I say to the court that if you, you know, in your infinite wisdom and contemplating what this civil action means in the end result, just look again about 93A.170.16 because there's not really that much difference between the two. Mr. Resnick, I can understand the concept that the General Assembly was trying to encourage settlement of claims prior to the filing of suit. But Judge Barron has been trying to get you to tell us what would be the accrual date. When would a civil action, because we need something that's across the board, date-determinant or occasion-determinant. I'm probably having trouble understanding the question. If I understand what you just said, I say the date begins, the so-called potential date begins, the day the injury occurs, just like it does with the statute of limitations. I think it really sounds like what you're saying is it's the date that you would have a claim within the meaning of the policy of the insurer. Yes. And the thing that's just very strange is that's a perfectly administrable, easily intelligible, it's the one the insurance company applies to you to make a claim against them. It's just really odd for the legislature, if that was their intent, to use the phrase civil action rather than claim against a carrier. If that's true, then we said in our brief, perhaps Judge McConnell should have inquired either through certification to the Rhode Island Supreme Court or independently what the intent of the legislature was when they implemented that statute. I can guess at it, I can think, we all can understand why they did it. It doesn't make any sense to indicate that you can have a case going on for like two years and eight months and then you institute suit to try to now effectuate 27.2. We have used it all these years without this issue because everybody, and don't forget, even Appella accepted what I said is a normal application and understanding of 27.2 in the beginning because they were asking for extensions and they were also taking the position that it wasn't Rhode Island law, it was Massachusetts law applied. But as far as their understanding and accepting the everyday application of that statute to effectuate a fast settlement, they had no problem with it until now we conceptualize it in the federal court on the issue as now what is a civil action. So we've made this terminology to be very, very determinative when the idea of the legislature was to do it expeditiously and practical. Well, isn't it typical that these demands are made after suit has been brought and you've had depositions and so forth and the run mind of your practice, isn't that the way this kind of statute is normally handled? No. I've been doing this for 50 years. No. That's not, no. What we do, when, listen, is it foolish for me to say what everybody already knows that you have some of these clients who have such horrific injuries and there's such a small policy, the only way you can even get them any type of measure of justice is to look for technicality. And once in a while, as I said before, the technicality flows towards the plaintiff. And what we try to do, and what I always do in these cases, is once I can submit sufficient enough medical information to the carrier, and for whatever reason, whether it's liability or procrastination or dilatory tactics, I don't really care why they do it, but if they sit on it too long, then they open themselves and they expand the policy limit. But if that's the reality of it, then for plaintiffs as a group, their interpretation is more favorable to plaintiffs as a group because you don't have to worry about filing the settlement thing until you file the suit. You're not at risk. It's an obligation to get the benefit of the interest for you first to have to throw out the settlement agreement and that's the first 30 days, right? In other words, what your account is, is that you didn't want them to accept the settlement offer. I didn't want them, no, absolutely not. So if you don't even have, if you could just wait until after suit, or is your idea that the advantage of this statute is that it enables you to jam them with the settlement offer that they have no way they could possibly accept? And so it frees you when you then file suit to get the interest? Yeah, if you came out with a rule, if you come out with a rule and you stay with the rule that we're going to wait until we institute suit, you've practically put a nail in most of these cases because that's not going to happen. The whole idea of it is to prevent that from happening because as long as, what it does, it puts high notice and visibility on the carrier to address the issue right away and if they don't, that's why they came out with a ceremony. Don't forget, when the court came out with a ceremony, they never even argued that issue with the Supreme Court. Post-suit, you would never file, you would never propose the settlement. Excuse me? Once you file the suit, you're not going to propose the settlement is what you're telling me. No, I'm not saying that. No, I'm saying once, if I file, all these cases are different. If there was, in some of these cases we're reading, there was a huge policy, $500,000 policy. So, you know, you demand the $500,000, they don't want to pay right away because they figure they can probably get out of it for less. So now you've already instituted suit, now one of these cases went to suit, they get $750,000, and it was our Bella case, I think it was Gore, and now they try to get out of it for other reasons. They're always looking for reasons to try to get out of it. My point is, there are those cases that you want to wait until you put it to suit, and there are cases like this that hopefully, once in a great while, you get lucky. It's not nefarious, it's not illegal, it's absolutely correct, and that is why that statute exists. To put the nail in the coffin for that statute and kill most of the ceremony is to allow the decision that came in the Federal Court of Rhode Island to stand. It shouldn't stand. It doesn't make good law, it doesn't make good sense, and it doesn't benefit the injured public. All it does, again, is put a smile on the face of the insurance carriers, and they've got enough already. So I would ask the court that if whatever reason, in your consensus, that you don't feel comfortable in disagreeing with Judge McConnell, then I'd ask you to take it to another level and say, maybe we should certify it to the Rhode Island Supreme Court and see what they want to do with their own statute. Thank you. Thank you. Good afternoon. Good afternoon. May it please the Court, my name is Tom Presley. I represent Arbella. To answer Judge Thompson's questions, pursuant to the materials submitted by the plaintiff, there were actually two written responses within that 30-day period by Arbella to the demand letter. One was on February 7th. That's referenced in the brief. And then there's a page two of a letter from my former colleague, Sean McCarthy, at Lynch & Lynch, representing Arbella, dated February 23rd, talking about this time period. So, Your Honor, you have two responses to receiving the demand. Why were you asking for the extension, if you thought the 30-day didn't apply? Well, I think every lawyer, and hopefully every insurance company, proceeds in an abundance of caution, wary, concerned, worried about what does and doesn't apply. So I think that Arbella was proceeding here in an abundance of caution, and that seems to me as something that should be discouraged, not penalized. But there was never a concession of applicability of the statute to these facts or circumstances. In fact, if you read the letters from Arbella, they both say repeatedly that we don't agree that this statute applies to the facts of this case. They say it explicitly in the letters. So, again, it's proceeding carefully. Maybe, God forbid, some court holds that the statute applies to our conduct. Let's try to meet the deadline if we can. Although, as Your Honor points out, I'm sorry? I mean, are you saying factually it didn't? Did you take the position early on that factually this statute didn't apply because suit had not yet been instituted? Or was that a position you took later on? I don't know exactly what my colleague, Mr. McCarty, had in mind. Maybe he had a little bit of both, that because it's a Massachusetts company, it doesn't apply, and also because it's not in the context of a civil action that it doesn't apply. But he just stated repeatedly that he didn't believe either, rejected settlement offer interest statute would apply to these facts. Are you arguing that your request for an extension keeps you in the 30 days? I would, Your Honor, but what I'm really arguing is that the statute doesn't apply. That's what we're really arguing here, that it doesn't apply. Because suit had not been filed. Excuse me? Because suit had not been filed. Exactly correct. To me, this statute, it's just so crystal clear. I just want to understand what's happening. I think I've lost the thread of what, to go back to the question Judge Stoll asked at the beginning, what we're arguing about. You want to take the position that you can accept the settlement even though the 30 days have run, correct? What, because the statute doesn't apply? I understand, but your position is that because of that, then the suit can't be brought. Correct, the case is settled. The case is settled. Independent of whether they might get interest or not, they can't even bring suit for a judgment greater than the policy. The whole thing is out. Right. Okay. So one thing that's just a little puzzling is that depends on the idea that there was still a valid settlement offer put out by the one making the offer. Right? That party, when they made that offer, clearly thought the 30-day limit applied. They clearly referred to the statute. And you clearly responded as if they were correct in thinking that. We responded that there was concern, not that they were correct because we said we don't think the statute applies, so we always took that position. You didn't take the position that the statute didn't apply because it doesn't apply in the pre-suit period. It wasn't explicit in the letter, but it's implicit that you're reserving all of your rights. We reserve all of our rights in these letters. I'm just wondering whether this is just an odd case in which what we have is that offer has expired because it was put forward with a 30-day time limit. You never gave any impression that you thought otherwise. Then to accept it, well, why is it even that there's a valid offer out there anymore? There's nothing in the letter itself that says you have to accept this within 30 days. Well, the reference to the statute suggests that it's presumptively rejected if you don't respond within the 30 days. Then you say you didn't respond. We did reply in writing, but even then it sets up a presumption. The statute does not say you have to pay within 30 days. So how can you say that the offer set up a requirement that you pay within 30 days? You issued a reservation of rights. That was your response, I assume, initially, just a standard reservation of rights in your response to them. I wouldn't call that a reservation of rights. A reservation of rights is a letter we would have sent to the insured, to Mr. Johnson, the defendant now, saying we're reserving our rights until we determine whether this coverage issue about where he was living and whether he could be in our ballot insured had been resolved. How would you characterize your response to the plaintiff's request? A request for more time, and insurance companies can have a hundred reasons to need more time. They have nothing to do with the statutory deadline that may or may not be looming against them. We want to open up all the cases. The plaintiff represents that he rejected that extension of time, right? Does the record show that? I don't know of any letter where he says that. There's no letter in the record in this case saying he rejected opposition. Well, you guys take notes in your file. Is there a note in your file from your colleague saying that he had a conversation with Mr. Resmini and that Mr. Resmini rejected it? It's been a while since I looked at it. I'm getting ready for today. I'm looking at what's in the record. There's nothing like that in the record. I'm not aware of any such call. I don't doubt Mr. Resmini said what he said. All I know is that the statute doesn't set up a 30-day deadline for accepting a settlement offer. That's not what it says. Yeah, but contract law means you can't accept an offer that's not on the table. So if I put out an offer and I say you've got to respond to this offer within 30 days or it's rejected, and you call me up and say, can I have more time, and I say no, I assume you can't then accept it on the 45th day under contract law. I think you have to say that somehow the time factor was a material element of the settlement offer. In this case, there's no material element. This was 11 weeks after the accident happened, two years and nine months before the statute of limitations was run. In no way was time of the essence with regard to this offer. So in that respect, it doesn't seem to be a material condition of the settlement. If you look at the vertiage of the settlement demand, the first paragraph of it, you can see it's on page 42 of the appendix. Look at the whole settlement demand letter. The first paragraph is some questions about what the coverage was. The second paragraph is a very vague description of the plaintiff being in the hospital. The third paragraph says assuming that $100,000 is the policy limit, then we'll take it. Consistent with a ceremony and demarco in these two statutes. I don't know what that means, consistent with. But if the statute doesn't set up a deadline, then certainly a vague allusion to it in a letter can't set up a deadline. If Mr. Rasmini wanted a settlement within 30 days, he should have said so in his letter, not vaguely alluded to a statute of dubious connection or application to the case. If I understand what Mr. Rasmini said, he said that they never accepted the money. In other words, they rejected the offer saying we now intend to seek more than your policy limits. I gather that. Is there a policy in Rhode Island under that kind of situation where you can tender the $100,000 policy limit to the court and that ends your liability? Do you know? I don't think it would apply to these circumstances, Your Honor. It would not. Well, the thing that's odd about your position that I'm just not following is I take the idea that if the offer didn't make clear that it had a 30-day deadline, they can't then say it did have one. And you say they didn't make it clear that it had one. But the puzzling thing is if they didn't make that clear, why were you asking for an extension? Because, again, the statute does have this 30-day period. So you must have understood the offer to be coming with that. We understood that we better proceed with caution, and we did. To go back to the beginning a little bit, I think one thing we have to recognize is that Rhode Island, unlike Massachusetts, does not recognize a cause of action for bad faith between third-party claims and insurance companies. So there's sort of a gap in what Rhode Island does compared to what Massachusetts does, which starts affecting an insurance company the day the claim comes in. Under the Eau Claire case, which was affirmed recently by the Summit insurance case, there's no third-party claim for not settling a claim promptly. So what the plaintiff's bar has tried to do is to make a ceremony in the rejected settlement offer statute, these demand letters. They've tried to make them into 938 letters, but they're not. They don't have that effect. The effect they have is at the end of the day. When you go to trial and you lose, you have this big risk. But the only case that really talks about how to apply the statute, there's two cases, the district court case and then this court's case in Amherst some 27 years ago. Judge Stahl, I don't know if you remember this, but you were on that case, the Amherst case. And the court reckoned that that's a case where one of these demands, a rejected settlement offer interest statute demand, was made after the lawsuit had been filed, as Your Honor is contemplating, long after the accident. Not long before trial, actually. So this court has recognized that the statute applies in the instance of a lawsuit, in the instance of a civil action. It's right in the Amherst decision. So you're asking us to apply civil action in the ordinary way perhaps people think of it, actual action in court. I'm talking about two things, Your Honor. I'm talking about, A, the plain meaning of the words. The statute talks about a civil action. It talks about plaintiffs. It talks about defendants. Those words are in the statute. Those are the names of parties in a lawsuit. But I'm also talking about legal definitions. There's a case called Thrift from the 19 teams in Rhode Island that talks about how a divorce action is a civil action because it's proceeding in court. I'm talking about rule two of the federal in and around rules of civil procedure. They define a civil action as when you file a lawsuit. The famous book, The Civil Action, it's about a lawsuit. It's not about the claim stage. It's about what happened in that lawsuit. So I think it's just applying the plain meaning of these words as we all know them. Yes, these demands are sometimes sent out early in the case, but they don't have any effect on the claim stage because of Rhode Island's law about no third-party liability. They don't mean anything until the case goes to trial and you lose. That's how Rhode Island has decided to penalize bad decisions. I understand your position, and it has real import for purposes. The interpretation you're asking has real import for purposes of how to think about whether you're liable for the interest on a judgment going forward. But I guess there's just still a separate question which I'm struggling with, which is for contract law purposes in Rhode Island, was this an offer that still could be accepted when it was? That seems to me just a distinct question from the question of how to interpret the statute. Even if you're right, that question still remains as to whether there was any offer at all because in this case the acceptance of it kills the suit, not just the interest point. It kills the suit itself. And there's at least in my mind some question of because the statute is arguably confusing on that point, hadn't been resolved in any clear way by any court, you not only would get the benefit of the interpretation of civil action for the interest point, but then you're also able to treat that settlement offer, which appears to have been put out on the assumption that it had a 30-day expiration date, as if it didn't. That doesn't seem totally just. What I'm suggesting is that in no respect was that really a material term under all the circumstances. It was not a material term. Is it material, Your Honor, that we opted to pay the $100,000 on day 32 or 33 as opposed to 30? Is that really material? Is that the kind of thing that Mr. Resnini was talking about? This was sort of a gotcha moment for him. Is that how we're going to run our jurisprudence? We're going to go with gamesmanship and maybe some trickery? It doesn't seem what the law really contemplated, whether it's contract law or insurance law. It's not what the law contemplates. I guess I'll close out. Do I have any more time left? No. The policies behind these laws, the policy for enforcement of settlements is they're encouraged to be enforced because they hold people to their contracts and we avoid costly, time-consuming lawsuits. The purpose of the ceremony in 27-7-2.2 in 93A, to encourage settlement, we had to settle a case two years ago. We're only here today because of positions and decisions taken by the plaintiff. We had a settled case. The last thing I want to say, because it goes back to Amherst, the court specifically said in Amherst that this statute was so plain, so evident, so obvious that the plain meaning doctrine applied and that there was no need to certify the case to the Brown Supreme Court. That's what this court said 27 years ago in Amherst about this statute. Thank you. Thank you. We have another argument. Good afternoon, Your Honors. May it please the Court. Lisa DeMaria on behalf of the appellees Horace Johnson and State Road Auto Sales, Inc. It's undisputed that Mr. Johnson and State Road Auto Sales, Inc. were both insured under Arbella's policy at the time that these settlement negotiations that are at issue in this case were ongoing. Therefore, Mr. Johnson and State Road Auto Sales today rely upon and renew all of the arguments made by Arbella's counsel and set forth in the joint appellee's brief that was submitted to Your Honors. Thank you. Thank you. All rise. Thank you.